IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS MCGLINCHY, o/b/o <br> MELANIE KOZAK, deceased <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY,[1] <br> Commissioner of Social Security <br><br> Defendant | CIVIL ACTION <br><br> No. 22-cv-00412-RAL |

**RICHARD A. LLORET**                                                     **May 30, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Melanie Kozak's ("Claimant's") application for Social Security disability benefits. The ALJ determined that Ms. Kozak was not disabled under the Social Security Act ("SSA"). R. 26.[2] Thomas McGlinchy ("Plaintiff"), Ms. Kozak's father, now requests review of the ALJ's decision on her behalf. *See* Doc. No. 6[3] ("Pl. Br."). After careful consideration, I find that the ALJ erred and remand is warranted.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to the administrative record will be listed as "R. ____". The administrative record is document number five on ECF.

[3] Unless otherwise noted, as here, all references to the electronically docketed record are cited as "Doc. No. ___ at ___."

1

**PROCEDURAL HISTORY**

Ms. Kozak filed an application for Disability Insurance Benefits on August 8, 2019 and an application for Supplemental Security Income on December 3, 2019. R. 246–259, 260–268. Ms. Kozak alleges a disability onset date of August 25, 2017, citing bipolar disorder and concentration problems. R. 282. Ms. Kozak's application was denied initially on March 5, 2020 and upon reconsideration on December 7, 2020 R. 13. Ms. Kozak requested a hearing before an ALJ which was held on May 3, 2021. R. 13, 32. Ms. Kozak, her mother, and a Vocational Expert each testified. R. 32–66. Following the hearing, the ALJ found that Ms. Kozak was not disabled under the Social Security Act during the relevant period. R. 26. On December 1, 2021, the ALJ denied Ms. Kozak's request for review, making the ALJ's determination a final determination. *See* R. 1–6. Ms. Kozak then filed an appeal in this court. *See* Doc. No. 1.[4] Ms. Kozak sadly passed away during the pendency of this action. *See* Doc. No. 10. Her father, Mr. Thomas McGlinchy, has been substituted as Plaintiff and seeks relief on her behalf. Doc. No. 14.

**FACTUAL BACKGROUND**

**I.     The Claimant's Background**

Ms. Kozak suffered from bipolar disorder and related mental health conditions. She was forty five years old on her alleged disability onset date, making her a "younger person" under the regulations. R. 25; 20 C.F.R. §§ 404.1563. She completed an Associate's degree and had past relevant work experience as a central service operator and case aide for the Bucks County Children and Youth Social Services Agency. R. 41–42, 53. Ms. Kozak was demoted from her role as a case aide (clerk level III) to a

---

[4] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

central service operator (clerk level I) after it was determined that she was unable to perform the duties of her initial role. R. 41. Ms. Kozak stopped working in August 2017 after she was hospitalized for suicidal ideation and severe mental health symptoms. R. 38, 42, 344–345.

## II. The ALJ's Decision

The ALJ determined that Ms. Kozak was not disabled under the Social Security Act during the relevant period. R. 26. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[5]

Prior to step one, the ALJ determined that Ms. Kozak met the insured status requirements of the the Social Security Act through June 30, 2023.[6] R. 16. At step one, the ALJ confirmed that Ms. Kozak had not engaged in substantial gainful activity since August 25, 2017, her alleged disability onset date. R. 16. At step two, the ALJ determined that Ms. Kozak had five severe impairments: bipolar affect disorder, anxiety disorder, post-traumatic stress disorder, unspecified depressive disorder, and substance abuse disorders. R. 16. At step three, the ALJ compared Ms. Kozak's impairments to those contained in the Social Security Listing of Impairments[7] and found that her

---

[5] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[6] When an applicant is seeking disability insurance benefits, the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id.* The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

[7] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or

impairments did not, either individually or jointly, meet or medically equate to the severity of one of the listed impairments. R. 17–18.

Prior to reviewing step four, the ALJ determined that Ms. Kozak had the residual capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations: the Claimant is restricted to simple, routine taks with few workplace changes, no production rate or assembly line work, and no interaction with the general public. R. 19.

At step four, in light of the Vocational Expert's testimony that each of Ms. Kozak's past jobs were semi-skilled occupations, the ALJ determined that Ms. Kozak was unable to perform any past relevant work. R. 24.

At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy" that someone of Ms. Kozak's age, education, work experience, and residual functional capacity could perform, including the job of an inspector (DOT 669.687–014) with 12,000 jobs nationally, houskeeping cleaner (DOT 323.687–14) with 450,000 jobs nationally, and stores laborer (DOT 922.687–058) with 600,000 jobs nationally. R. 25. The ALJ ultimately concluded that Ms. Kozak was not disabled during the relevant period. R. 26.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422,

---

equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

4

427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*,

416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Plaintiff, on behalf of Ms. Kozak and through counsel, presents four issues for my review. He first asserts that remand is required because the ALJ failed to explain his rejection of specific functional limitations suggested by the examining state agency psychologists. Pl. Br. at 3–8. He next asserts that remand is warranted because the ALJ failed to consider evidence that Ms. Kozak was unable to perform work on a regular and sustained basis. Pl. Br. at 8–9. He further asserts that the ALJ failed to meet his burden

6

at step five to identify a significant number of jobs that Ms. Kozak was capable of performing. Pl. Br. at 10–17. Finally, Plaintiff asserts that "the ALJ and Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed." Pl. Br. at 17–18. The Commissioner responds that "[t]he ALJ carefully considered the entire record, applied the correct law, and relied on substantial evidence in determining that Plaintiff was not eligible for disability insurance benefits (DIB) or supplemental security income (SSI)" and asks me to affirm. *See* Comm. Br. at 1. For the reasons discussed below, I find that remand is warranted.

**I.      The ALJ erred at step three by either failing to adopt, or to explain his reasons for rejecting, potentially work preclusive limitations related to Ms. Kozak's ability to concentrate.**

Plaintiff first asserts that the ALJ erred in his treatment of the opinions of state agency psychology consultants Anthony Galdieri, PhD and Dennis Gold, PhD. After reviewing the record, the ALJ determined that Ms. Kozak was capable of the full range of work at all exertional levels but she must be restricted to simple, routine taks with few workplace changes, no production rate or assembly line work, and no interaction with the general public. R. 19. Plaintiff argues that the ALJ should have also included limitations related to Ms. Kozak's ability to concentrate or persist in her RFC given Dr. Galdieri and Dr. Gold's findings that she had "sustained concentration and persistence limitations." Pl. Br. at 3–8; R. 72, 98. While the ALJ acknowledged that Ms. Kozak had a "moderate" limitation in her ability to concentrate, he did not adopt any "corresponding limitation on concentration in his RFC." Pl. Br. at 4. Because the ALJ failed to adequately explain why he concluded that Ms. Kozak did not require accommodations relating to her ability to concentrate, his determination regarding Ms. Kozak's RFC is not supported by substantial evidence.

7

A claimant's RFC is the most that she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence and include any "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason").

Dr. Galdieri performed a consultive examination of Ms. Kozak on March 3, 2020. *See* R. 67–75. At that examination, Dr. Galdieri evaluated Ms. Kozak's psychological condition and evaluated her ability to perform sustained work activities. Regarding Ms. Kozak's "sustained concentration and persistence limitations," Dr. Galdieri determined that she was moderately limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruprions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. R. 72. Dr. Gold examined Ms. Kozak on October 28, 2020 on reconsideration and likewise found that she was markedly limited in her ability to carry out detailed instructions and had moderate limitations in her ability to maintain attention and concentration for extended periods; to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruprions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods. R. 80–81.

The ALJ summarized Dr. Galdieri's and Dr. Gold's findings in his opinion and noted that he found each of their assessments to be "persuasive." *See* R. 22. Consistent with this view, the ALJ determined at step three that Ms. Kozak had "moderate limitations" in her "ability to concentrate, persist, or maintain pace." R. 17–18. Despite this acknowledgement, the ALJ did not include any limitations related to Ms. Kozak's ability to concentrate in her RFC. Nor did he explain whether or why such limitations would not be required.

The ALJ must set forth the reasons for crediting or discrediting relevant or pertinent medical evidence. *Burnett*, 220 F.3d at 121–22. "Although the ALJ 'may properly accept some parts of the medical evidence and reject other parts . . . he must consider all of the evidence and give some reason for discounting the evidence he rejects.'" *See Lanza v. Astrue*, No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. Apr. 28, 2009) (quoting *Colon v. Barnhart*, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006) (Baylson, J.)). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121–122 (quoting *Cotter*, 642 F.2d at 705).

The applicable regulations require that the ALJ determine a claimant's capacity for work on a "regular and continuing basis[,]" 20 C.F.R. §§ 404.1545(b), (c), 416.945(b)(c), which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial*

*Claims*, SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). If an individual cannot sustain work on a regular and continuing basis, she must be found to be disabled. Ms. Kozak's ability to concentrate is consequential because, as the Vocational Expert testified, "[n]o work would be maintainable" for an individual who was unable to maintain attention for a 2-hour segment. *See* R. 54. The ALJ agreed that Ms. Kozak had limitations in her ability to concentrate, but failed to either accommodate those in her RFC or to explain why her concentration problems would not restrict her ability to work. Without such an explanation, the ALJ has not provided a sufficient analysis for me to make a proper determination on review. Remand is required for further consideration.

## II. The ALJ erred by failing to consider evidence suggesting that Ms. Kozak was unable to work on a regular and sustained basis for a continuous period of 12 months.

Plaintiff next argues that the ALJ erred by failing to consider whether her medical condition would cause her to be intolerably absent from work. Pl. Br. at 8–9. As discussed, an individual who cannot sustain work on a regular and continuing basis must be found to be disabled. 20 C.F.R. §§ 404.1545(b), (c), 416.945(b)(c); SSR 96-8P, 1996 WL 374184. A plaintiff qualifies as disabled if her physical or mental impairments are so severe that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). Frequent absences generally preclude an individual from holding down a steady job. Indeed, the Vocational Expert testified that a claimant would be unemployable if she were absent more than 8 days per year. R. 56. Further, the Vocational Expert agreed that employers in positions such as the ones that he identified

10

for Ms. Kozak are "generally pretty strict when it comes to things like attendance and punctuality." R. 56.

As explained in Plaintiff's brief, Ms. Kozak presented evidence that during 2020 (the year immediately preceeding the ALJ's decision) she spent several weeks either hospitalized or receiving intensive treatment for mental health or substance abuse issues. Specifically, Ms. Kozak presented evidence that she was attending an intensive therapy program between January 21, 2020 and February 14, 2020 requiring in-person attendance four days per week. R. 1646. Later that year, beginning on September 28, 2020, she entered residential care for substance abuse and mental health treatment. R. 1708. After her discharge on October 14, 2020, Ms. Kozak continued treatment in a partial hospitalization. R. 1717. The ALJ found that Ms. Kozak was not disabled and so necessarily determined that she would not be absent more than 8 days per year. This finding appears to be inconsistent with the medical evidence showing that Ms. Kozak was actually unable to work for at least 33 days in the year prior to the ALJ's opinion. *See* R. 20-21. The ALJ "need not undertake an exhaustive discussion of all the evidence." *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773–74 (3d Cir. 2004). However, an "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 110 (3d Cir. 2006) (citing *Cotter*, 642 F. F2d at 705). The ALJ's failure to discuss in any detail how Ms. Kozak's need for inpatient mental health treatment may impact her ability to regularly attend work precludes review.

The Commissioner attempts to downplay the significance of these lengthy treatment periods by citing case law standing for the proposition that attendance at

medical appointments is not factored into the number of absent days. Comm. Br. at 14–15 (citing *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902 (11th Cir. 2017); *Simpson v. Comm'r of S.S.A.*, No. 09-02731, 2011 WL 1261499 (D.S.C. Mar. 31, 2011); *Hoppa v. Colvin*, No. 12-847, 2013 WL 5874639 (W.D. Wis. Oct. 31, 2013)). These cases are inapposite. Ms. Kozak's periods of treatment were not typical medical appointments that could be scheduled outside regular business hours. Rather, Ms. Kozak was receiving intensive, residential treatment for the symptoms of her bipolar disorder which were "necessitated by a total breakdown." Doc. No. 8 at 4 ("Pl. Reply"). A similar hospitalization caused Ms. Kozak to stop working altogether in August 2017. The SSA Regulations advise than an ALJ should consider other evidence, including "what medications, treatments or other methods" the claimant uses when assessing the "intensity and persistence" of her symptoms. 20 C.F.R. § 404.1529. The nature of Ms. Kozak's treatment suggests that her mental health symptoms seriously impaced her life. In considering the effect of her treatment on her ability to work, the ALJ should have done more than merely acknowledge the dates of Ms. Kozak's treatment.

The Commissioner further argues that these periods of treatment are not significant because Ms. Kozak did not present evidence that she would require inpatient treatment in the future. Comm. Br. at 14–15. This *post-hac* explanation is absent from the ALJ's analysis. If that was the basis for the ALJ's decision, then he should have included it in his opinion. It is Plaintiff's burden to provide evidence of her disability, and it is the Commissioner's responsibility to weigh that evidence and provide an explanation for his conclusions. Without such an explanation, I cannot find that substantial evidence supports the ALJ's determination. Remand is required for consideration of this issue.

### III. The Commissioner has not met his burden to show that other work existed in significant numbers in the national economy that Ms. Kozak would be capable of performing.

Plaintiff further argues that remand is warranted because the ALJ's RFC determination that Ms. Kozak was limited to simple, routine tasks and could have "no interaction with the general public" is in conflict with the Vocational Expert's testimony that she can perform the requirements of the representative occupations of housekeeping cleaner or strores laborer. *See* Pl. Br. at 8–17. The Commissioner bears the burden at step five to prove that jobs exist in significant numbers in the national economy that the claimant is able to perform. *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004). The Vocational Expert named three occupations in response to the ALJ's hypothetical questions, but it appears that two of these occupations are actually precluded by the RFC restrictions identified by the ALJ. Given this contradictory vocational evidence, the ALJ has failed to identify a significant number of jobs that Ms. Kozak was capable of performing and has failed to satisfy his burden at step five. I will therefore remand for reconsideration of this step

Plaintiff asserts that, according to the Vocational Expert Handbook, which provides that a job requiring reasoning level two includes the capacity to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions," Ms. Kozak would have been unable to perform the reasoning level two occupation of stores operator. Pl. Br. at 11–12. As the Vocational Expert testified on cross-examination, a limitation to simple, routine tasks would preclude the ability to carry out *detailed* written or oral instructions, like those required under reasoning level two. *See* R. 55. The stores operator role identified by the Vocational Expert required a reasoning level of two, which requires the ability "to carry out detailed but uninvolved

13

written or oral instructions." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 306 (E.D. Pa. 2015) (Stengel, J.) (quoting DOT, Appendix C). I find that there is a conflict between the Vocational Expert's testimony that a restriction to routine, repetitive tasks would preclude Ms. Kozak from being able to carry out detailed instructions and his testimony that she could perform the reasoning level two stores laborer job.

Plaintiff further argues that Ms. Kozak would be unable to perform the role of housekeeping cleaner due to the RFC restriction that she could have "no interaction with the general public." R. 19. As the Vocational Expert testified, the occupation of housekeeping cleaner requires intermittent "social proximity" to others. R. 55. The specific housekeeping cleaner occupation selected by the Vocational Expert requires interaction with "patrons." DOT § 323.687-014 (noting a housecleeping cleaner "checks wraps and offers personal assistance to patrons."). Given Ms. Kozak's restriction that she could have "no interaction with the general public," it appears that she would be precluded from the occupation of housekeeping cleaner as described in the DOT.

The Commissioner does not dispute that Ms. Kozak's RFC would have prevented her from working as a stores laborer or houskeeping cleaner, but argues that the remaining dowel inspector occupation alone represents a significant level of employment sufficient to satisfy his step five burden. *See* Comm. Br. at 15–16. According to the Vocational Expert, the dowel inspector occupation represents 12,000 jobs nationally. R. 54. While there is no bright line rule for what consitututes "significant numbers" of jobs under the Social Security Act (see *See* 20 C.F.R. § 404.1566), there are cases supporting that this level of employment is insufficient. *See West v. Chater*, No. 95-739, 1997 WL 764507, at *1 (S.D. Ohio Aug. 21, 1997) ("100 jobs locally, 1,200 jobs statewide, and 45,000 jobs nationally did not constitute a "significant" number of

14

jobs under the statute."); *James A. v. Saul*, 471 F.Supp.3d 856, (N.D. Ind. 2020) ("[t]o the Court's knowledge, 14,500 is far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant[.]"); *Lemauga v. Berryhill*, 686 F. App'x 420, 422 n.2 (9th Cir. 2017) ("We note that this court has never found [12,600] to be significant,"); *Ellis v. Kijakazi*, 553 F. Supp. 3d 628, 635 (E.D. Wis. 2021) (remanding where only 14,500 jobs identified in the national economy).

I find that the Commissioner failed to meet his burden of establishing that that a significant number of jobs exist in the national economy that Ms. Kozak could perform. On remand, the ALJ is instructed to explain these inconsistencies identified by Plaintiff and to determine whether any other jobs would be appropriate for someone of Ms. Kozak's RFC level. To the extent the ALJ's RFC determination changes based on the discussion above, he is instructed to reevaluate his step five analysis accordingly.

## IV. The ALJ and Appeals Council Members were properly appointed and so had authority to adjudicate Ms. Kozak's claim.

Plaintiff concludes by arguing that the ALJ and Appeals Council members who adjudicated Ms. Kozak's claim were not properly appointed by then-Acting Commissioner Nancy Berryhill, nor by any subsequent Commissioner or Acting Commissioner, and so lacked authority to rule in her case. Pl. Br. at 17–18. The Commissioner responds that the ALJ and Appeals Council members were properly appointed, and that to hold otherwise "create the administrative paralysis that Congress sought to avoid" when it enacted the appointment statute. Comm. Br. at 20–30. I agree with the Commissioner that the ALJ and Appeals Council members were properly appointed and that remand on this issue is unnecessary.

15

The Federal Vacancies Reform Act, 5 U.S.C. §§ 3341-49 ("FVRA"), sets out who may serve as an acting official and establishes "the means for 'temporarily authorizing an acting official to perform the functions and duties' of a vacant executive branch position requiring Presidential appointment and Senate confirmation." *Hernandez v. Kijakazi*, No. 22-1556, 2022 WL 17751355, at *10 (D.N.J. Dec. 19, 2022); *see* 5 U.S.C.A. § 3347. The temporary authorization is limited by Section 3346(a)(1), which restricts an acting official's service to "no longer than 210 days beginning on the date the vacancy occurs," and Section 3346(a)(2) which states that an acting officer may serve "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C.A. § 3346(a)(1)-(2). Under the FVRA's enforcement provision, "[u]nless an officer or employee is performing the functions and duties in accordance with [Sections] 3345, 3346, and 3347 . . . the office shall remain vacant" and "only the head of such Executive agency may perform any function or duty of such office." 5 U.S.C.A. § 3348(b)(1)-(2). As a result, any action taken by an acting official not in compliance with sections 3345, 3346 and 3347 "shall have no force or effect." 5 U.S.C.A. § 3348(d)(1); *see Hernandez*, 2022 WL 17751355, at *10.

Ms. Berryhill began serving as Acting Commissioner of the Social Security Administration on January 20, 2017 and served until her 210-day term ended on November 16, 2017. See Pl. Br. at 17; Comm. Br. at 20. The Commissioner position thus became vacant on November 17, 2017, following the expiration of Ms. Berryhill's initial term. *See* 5 U.S.C. § 3348; *Hernandez*, 2022 WL 17751355, at *11. On April 17, 2018, President Trump nominated Andrew Saul to be the new Commissioner. *See* Comm. Br. at 20. At that time, the Social Security Administration interpreted Section 3346(a)(2) to

16

permit Ms. Berryhill to resume her role as Acting Commissioner for the period Mr. Saul's nomination was pending in the Senate. Comm. Br. at 20; *Hernandez*, 2022 WL 17751355, at *11. During that period, on July 16, 2018, Ms. Berryhill ratified the appointments of all SSA ALJs and Appeals Council members, including those involved in this case. *See* Pl. Br. at 18; Comm. Br. at 20.

Plaintiff now argues that any actions taken by Ms. Berryhill, as Acting Commissioner, post-November 16, 2017 were unlawful and requests that I accept the reasoning of the Minnesota district court in the cases *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022) and *Richard J. M. v. Kijakazi*, No. 19-827, 2022 WL 959914 (D. Minn. Mar. 30, 2022). Pl. Br. at 18 ("Plaintiff offers the exact same arguments here as the claimant in those cases."). Plaintiff's arguments fall flat. Since the filing of Plaintiff's briefs, the Court of Appeals for the Eighth Circuit has reversed Plaintiff's cited opinions, holding that the FVRA authorizes an "individual who has ceased serving [the 210-day term] under [Section] 3346(a)(1) to begin serving again under [Section] 3346(a)(2) once a nomination is sent to the Senate." *Dahle v. Kijakazi*, 62 F.4th 424, 427 (8th Cir. 2023).[8]

Following the Eighth Circuit's reasoning, I find that Ms. Berryhill's authority as Acting Commissioner resumed on the date of Mr. Saul's nomination on April 17, 2018

---

[8] In doing so, the Eighth Circuit joined numerous district courts (including district courts within our circuit) in rejecting the argument that then-Acting Commissioner Berryhill violated the FVRA when she ratified the appointment of the SSA ALJs and Appeals Council members on July 16, 2018. *See e.g., Ortiz-Rivera v. Kijakazi*, No. 21-02134, 2023 WL 25353 (M.D. Pa. Jan. 3, 2023); *Hernandez v. Kijakazi*, No. 22-01556, 2022 WL 17751355 (D.N.J. Dec. 19, 2022); *Bernadette H. v. Comm'r of Soc. Sec.*, No. 21-20586, 2022 WL 17080743 (D.N.J. Nov. 18, 2022); *Neale v. Kijakazi*, No. 21-915, 2022 WL 6111689 (D. Del. Oct. 7, 2022). On April 11, 2023, in the case *Rush v. Kijakazi*, 65 F.4th 114 (4th Cir. 2023), the Fourth Circuit likewise held that an acting officer may serve while a nomination is pending in accordance with Section 3346(a)(2) regardless of whether her service under Section 3346(a)(1) expired before the nomination was submitted and, thus, Ms. Berryhill was properly serving as Acting Commissioner when she ratified the ALJs' appointments.

and remained until Mr. Saul assumed office on June 17, 2019. Therefore, Ms. Berryhill acted lawfully in July 2018 when she ratified the appointments of the ALJ and Appeals Council members. Because the ALJ and Appeals Council members who adjudicated Ms. Kozak's claim were properly appointed, I find that their decisions were made with valid authority and do not remand on these grounds.

## CONCLUSION

Based upon the above, Plaintiff Thomas McGlinchy's request for review is granted. The final decision of the Commissioner is reversed, and this matter is remanded.

BY THE COURT:

 *s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**